| 36 | 211 |
| 47 | 204 |

## THE BOARD OF COMMISSIONERS OF SOMERVILLE

*v.*

### THEODORE ·T. JOHNSON et al.

1. The bare legal title, with no beneficial interest in the land, is sufficient to enable the holder to maintain ejectment, even against the person for whom he holds the legal title.

2. But a trustee cannot maintain ejectment against his *cestui que trust* when the facts justify a presumption that he has surrendered the legal estate to his *cestui que trust*.

3. A *cestui que trust* may bring an action at law in the name of his trustee, whenever necessary for the protection of the trust property, and the trustee can neither release the right of action nor discontinue the suit, but he may ask indemnity against costs.

4. A deed which describes the land conveyed by it as beginning at a point on the side of a street, and thence running along the street, will, if the grantor owns the street, pass the land to the centre of the street, but such, of course, will not be its effect if the land described as a street is owned by some other person than the grantor.

5. All persons who have in the object or objects of the suit an interest, apparent on the record, are necessary parties to a suit in equity.

---

On demurrer to bill.

Commissioners *v.* Johnson.

*Mr. S. B. Ransom,* for demurrants.

*Mr. James J. Bergen,* for complainants.

VAN FLEET, V. C.

The defendants are seeking to recover the possession of certain lands by ejectment. It is not disputed that they hold the legal title to the lands in question. The lands were conveyed to their ancestor by deed untrammeled by any trust or condition expressed on its face, bearing date October 25th, 1809. The ancestor of the defendants died testate March 12th, 1828. By his will, he directed his executors to make over, by deed, to the board of chosen freeholders of Somerset county the same title that he possessed to the lands in controversy, and also that the deed should declare that it was made " for the benefit and behoof and use of the present and future owners of the lots laid off on the Davenport farm," and he then added, " it being for their use that I now hold the lands." His executors, it will be observed, are to convey *the same title* that he held—a complete divestiture is directed. The defendants are the testator's heirs-at-law. The fee of the lands not having been devised, descended to the defendants. They have the bare legal title, but no beneficial estate or right.

Such a title is, however, sufficient to enable them to maintain ejectment even against the actual beneficial owner. A trustee, as tenant of the legal estate, may recover in ejectment from his *cestui que trust,* who can make no defence to an action at law, but must seek his remedy in equity. *Brown* ads. *Combs, 5 Dutch. 36; Reade* v. *Reade, 8 T. R. 18; Shine* v. *Gough, 1 Ball & B. 436.* But equity regards the equitable owner as the actual owner, and deals with equitable estates as possessing the same qualities and incidents as legal estates. A *cestui que trust* may bring an action at law in the name of his trustee, whenever it is necessary for the protection of the trust estate, and the trustee can neither release the right of action nor discontinue the suit. He may ask indemnity against the costs of the action, but he

cannot otherwise interfere in its prosecution. *Monmouth Ins. Co.* v. *Hutchinson, 6 C. E. Gr. 107 ; 2 Perry on Trusts § 520.*

It is not, perhaps, exactly accurate to say that a trustee may always, and under any condition of facts, maintain ejectment against his *cestui que trust.* He may, unless there is reasonable ground to presume that the legal estate has been surrendered to the *cestui que trust.* And the courts are always free to indulge in such a presumption whenever it appears that the *cestui que trust* is the only person interested in the trust estate, that the trust has been fulfilled and that the trustee should, in the proper discharge of his duty, have conveyed the legal estate. Courts of law, in deciding whether a surrender should be presumed or not, follow very closely the familiar rule in equity that that shall be considered already done which ought to have been done. *Obert* v. *Bordine, Spen. 394; Brown* ads. *Combs, 5 Dutch. 36.* But no such presumption can be made in favor of the complainants, for by the terms of the trust the legal title in no event is to be conveyed to them. It is to be conveyed to a trustee, who, the bill avers, has refused to accept. Hence, before the trust can be executed a new trustee must be appointed.

There can be no doubt, I think, that a valid trust was created by the will under consideration. By its terms, all the lands which, in dividing up the Davenport farm into lots, had been set apart for streets, and to which the testator held title, were to be conveyed to a trustee for the benefit and use of such persons as were or should become owners of the lots laid off on that farm. The complainants claim to be owners of such lots, and come, therefore, clearly within the description used to designate the persons who were to be benefited by the trust. As the beneficiaries of the trust, they have a right to ask a court of equity to establish and execute the trust. Under the facts stated, the complainants are without the least shadow of legal title to the lands in controversy. Davenport conveyed the streets to Johnson October 25th, 1809. At that date, so far as appears, Davenport had not conveyed a single lot—he still held title to them all—so that his conveyance of the streets to Johnson put the

title in this condition: Davenport held title to all the lots and Johnson held title to all the streets.

It must be admitted that the doctrine is settled in this state that if a deed describes the land conveyed by it as beginning at a point on the side of a street, and thence running along such street, the deed will, by legal intendment, pass the land to the centre of the street. *Salter* v. *Jonas, 10 Vr. 469.* But such effect can only be given to the deed of a grantor who owns not only the lot expressly conveyed by it but also the land adjacent, described as a street. It has never yet been held that where the land conveyed as adjacent to a street is owned by one person and the adjacent land, described as a street, is owned by another, that a deed made by the first will pass the land of the other. The rights of the complainants to the lands in controversy are, un-questionably, purely equitable, and the complainants consequently can only have adequate protection in a court of equity.

But I am compelled to conclude that the present action is defective for want of necessary parties. The primary object of the bill is to have certain trusts, created by the will of William John-son in favor of the owners of lots laid off on the Davenport farm, established and executed. Their execution will denude the defendants of the least pretence of legal title, and render them powerless to annoy the complainants further. The secondary object of the bill is to restrain the defendants from further attempting to recover the possession of the streets until the question of trust is decided. The will clearly confers a power upon the executors. They are charged with the duty of transferring the legal title to the trustee. The court cannot compel them to exercise the power unless they are before it as parties. I think they are indispensable parties. All persons who have in the object or objects of the suit an interest, apparent on the record, are necessary parties to a suit in equity. *Calvert on Part. 13.*

The board of chosen freeholders are also, in my opinion, necessary parties. They are the trustees designated in the will. The complainants, it is true, allege, on information and belief, that the board have refused to accept the appointment, but this is not sufficient to relieve them from the duty of bringing the

Commissioners v. Johnson.

board into court. The board can only act when assembled as a body, and the usual evidence of their action is their recorded proceedings. It may be that the board have not the requisite legal capacity to accept a trust of this character, but a judgment to that effect would be of no force against the board, unless it were a party to the suit in which it was pronounced.

I am also of opinion that the defendants in the other actions of ejectment are necessary parties. All persons having an apparent interest in the object of the suit are necessary parties. As already stated, the main object of this suit is to have the trusts created by the will established and executed. The trusts are that the lands are to be conveyed to a trustee, to be held by him for the benefit and use of the lot-owners. A common benefit is conferred. No attempt is made to define or particularize the uses or benefits which either individuals or classes are to take, but the design of the creator of the trust seems to have been that the benefits were to be enjoyed by the lot-owners jointly, or rather indiscriminately. I am unable to discover any legal reason why all the defendants, in the several actions of ejectment, could not have joined in a single bill. They are all lot-owners, or claim to be, either by legal or equitable title, and as such, are, by the plain words of the trust, entitled to its benefits. The argument of the complainants, on this branch of the case, proceeds upon the theory that the right of a lot-owner to the benefit of the trust, is confined to the street lying adjacent to his lot, but there is no such limitation of his right found in the will, and the court has no right to impose it.

I think a bill might have been so framed as not only to have embraced all the persons who had been sued in ejectment, but such other lot-owners as might, pending the controversy, be sued. If the complainants had sued on behalf of themselves, and such other lot-owners as might thereafter require the aid of a court of equity, I have no doubt that lot-owners, subsequently sued, could have asked to be made complainants, and after thus becoming parties, would have been entitled to protection by injunction. Such a course of practice, in a case not similar in its facts, but

similar in principle, was sanctioned by Vice-Chancellor Wigram in *Lund* v. *Blanshard, 4 Hare 290.*

I think the demurrer must be sustained on the ground of want of necessary parties. None of the other objections are maintainable.